UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN LOWRY and FRIEDA TAWIL, individually and on behalf of all others similarly situated,<br><br>                             Plaintiffs,<br><br>v.<br><br>BRUMIS IMPORTS, INC.,<br><br>                             Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiffs John Lowry and Frieda Tawil ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Brumis Imports, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

      1.      Plaintiffs bring this class action lawsuit on behalf of themselves and similarly situated consumers ("Class Members") who purchased Defendant's Brooklyn Steel-branded nonstick cookware (the "Products").[1] Defendant does not disclose that the Products contain per- and polyfluoroalkyl substances ("PFAS"), which are synthetic chemicals that pose undue health risks, even at low levels.

---

[1] Those Products include, but are not limited to, all varieties of Brooklyn Steel nonstick cookware products, which are also sold in a variety of sets: Atmosphere, Celeste, Cosmo, Diecast, Galaxy, Gravity, Luna, Lunar Eclipse, Mars, Milky Way, Nebula, Orion, Rocket, Satellite, Solstice, Summer Solstice, Supernova, Ultraviolet, Zodiac.

1

2. Laboratory studies have shown that PFAS exposure raises a host of health effects, such as various cancers, liver damage, and immunotoxicity effects.[2] Because of the concerns presented by PFAS, consumers—like Plaintiffs—care about their presence, even if in small amounts.

3. Defendant does not inform consumers of the presence of PFAS, despite its knowledge that the products contain PFAS.

4. Indeed, Defendant recently disclosed its intentional use of PFAS in the Products to the Maine Department of Environmental Protection, in connection with the Maine PFAS reporting law requirements.

5. The public advocacy group, Defend Our Health, received this information under a Freedom of Access Act request for public records and thereafter assisted in publishing Defendant's disclosure of PFAS in the Products.

6. Not only did Defendant omit that the Products contain PFAS, Defendant also made misrepresentations that the Products promote health and are good for the environment. The presence of PFAS, however, renders both representations false.

7. Defendant knew, or should have known, that PFAS are unsafe and raise health risks because "the dangers of PFAS are well known" to the point where "public demand is leading to a growing market for PFAS-free products."[3]

8. Based on Defendant's omission and misrepresentations, a reasonable consumer would expect that the Products are free from PFAS, as well as promote health and are good for

---

[2] Nicholas J. Heckert, et al. "Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity," ENVIRON. SCI. TECHNOL. 2022, 56, 1162-1173, 1162.

[3] Jeffrey Kluger, "Companies Knew the Dangers of PFAS 'Forever Chemicals'—and Kept Them Secret", TIME (June 1, 2023), https://time.com/6284266/pfas-forever-chemicals-manufacturers-kept-secret/.

2

the environment. Yet Defendant does not notify consumers, like Plaintiffs, that the Products contain PFAS, synthetic chemicals that pose undue health risks to humans and are bad for the environment.

9. Accordingly, Plaintiffs bring their claims against Defendant individually and on behalf of a class of all others similarly situated for (1) violation of New York's General Business Law § 349; (2) violation of New York's General Business Law § 350; and (3) Fraud.

**PARTIES**

10. Plaintiff John Lowry is an individual consumer who, at all times material hereto, was a citizen of the State of New York, residing in Pearl River, New York. Plaintiff Lowry purchased Defendant's Product in May 2023 from a ShopRite in Pearl River, New York, and used the Product in New York during the Class Period.

11. Plaintiff Lowry believed that the Product he purchased did not contain PFAS based on Defendant's omission of the fact that the Products contain PFAS. Defendant's omission was part of the basis of the bargain in that Plaintiff Lowry would not have purchased the Product or would not have been willing to pay the same amount for the Product had he known that it contained PFAS. As a direct result of Defendant's omission, Plaintiff Lowry suffered, and continues to suffer, economic injuries.

12. Plaintiff Frieda Tawil is an individual consumer who, at all times material hereto, was a citizen of the State of New York, residing in Brooklyn, New York. Plaintiff Tawil purchased one full set of Defendant's Brooklyn Steel non-stick pots and pans in 2023 from Macy's online website, and used the Product in New York during the Class Period.

13. Plaintiff Tawil believed that the Product she purchased did not contain PFAS based on Defendant's omission of the fact that the Products contain PFAS. Defendant's omissions were part of the basis of the bargain in that Plaintiff Tawil would not have purchased

the Product or would not have been willing to pay the same amount for the Product had she known that it contained PFAS.  As a direct result of Defendant's omissions, Plaintiff Tawil suffered, and continues to suffer, economic injuries.

14. Defendant Brumis Imports, Inc., is a New York corporation with its principal place of business in New York, New York.  Defendant manufactures, markets, advertises, and distributes the Products throughout the United States, including New York.  Defendant created and/or authorized the misleading and deceptive advertisements, packaging, and labeling for the Products.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a different state from Defendant.

16. This Court has personal jurisdiction over Defendant because Defendant is incorporated and maintains its principal place of business in New York.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

**Defendant's Products**

18. Defendant sells a variety of non-stick pots and pans (the "Products").

19. In doing so, Defendant represents that its Products are sustainable and good for the environment.  Specifically, that the Products contain "naturally sustainable ceramic coating [which] is good for [consumers] & for the environment[,]" as demonstrated below in Figure 1:

4

**Figure 1:**



20.     Defendant also represents that the Products are healthy for consumers. Specifically, that "nonstick coating uses less oil & butter to promote healthier cooking," as demonstrated below in Figure 2:

**Figure 2:**





21. Despite the healthy and environmentally friendly representations that Defendant makes to consumers, the Products contain a synthetic chemical that is harmful to both humans and the environment[4]: PFAS.

**The Presence of PFAS in the Products**

22. Scientific studies have shown that PFAS exposure raises a host of health effects in humans, such as cancers, liver damage, and immunotoxicity effects.[5]

23. In addition, the harmful risks also extend to the environment where, once introduced, they quickly spread around the globe through multiple pathways, as demonstrated below in Figure 3:

---

[4] *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, NAT. INST. OF ENV'T HEALTH SCIS., https://www.niehs.nih.gov/health/topics/agents/pfc (March 6, 2024).

[5] *Id.*

**Figure 3:**



24. Indeed, PFAS are known as "forever chemicals" because they are "resistant to environmental and metabolic degradation" and "build up" in the bodies that are exposed to PFAS.[6]

25. Because PFAS persist and bioaccumulate over time, they are harmful even at very low levels.

26. In light of the harm PFAS cause, consumers have grown increasingly aware of and concerned by PFAS in their bodies, the environment, and the products they use. According to a recent survey, "when asked to choose the top three factors [consumers] prioritize when

---

[6] *Research for Understanding PFAS Uptake and Bioaccumulation in Plant and Animals in Agricultural, Rural, and Tribal Communities Request for Applications (RFA)*, EPA (2023) 1, 2, https://www.epa.gov/system/files/documents/2023-10/fy23-star-epa-usda-pfas-rfa-october-2023-final.pdf; Phillip C. Bost, Mark J. Strynar, Jessica L. Reiner, Jerry A. Zweigenbaum, Patricia L. Secoura, Andrew B. Lindstrom & Janice A. Dye, *U.S. domestic cats as sentinels for perfluoroalkyl substances: Possible linkages with housing, obesity, and disease*, 151 ENV'T. RSCH. (2016) 145, https://doi.org/10.1016/j.envres.2016.07.027 (stating that PFAS are "resistant to biodegradation processes").

deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)."[7]

27. Moreover, "[t]he majority of shoppers…are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."[8]

28. Underscoring the gravity of the PFAS threat, on October 18, 2021, the Biden Administration announced accelerated efforts to protect Americans from PFAS, noting that they "can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."[9]

29. Recent legislation echoes this concern: New York, Washington, Vermont, Connecticut, Colorado, California, Maryland, Minnesota, Rhode Island, and Hawaii have banned the intentional use of PFAS in food packaging. These legislation actions make sense as researchers have also established that PFAS are mobile and readily migrate from food containers onto food.[10]

30. Maine—taking the legislation one step further—enacted a law that prohibits the sale of *any* product with intentionally added PFAS, effective January 1, 2030.[11]

---

[7] *Id*.

[8] *Id*.

[9] *One-Year Wrap-Up*, THE WHITE HOUSE (Jan. 20, 2022), https://www.whitehouse.gov/ceq/news-updates/2022/01/20/one-year-wrap-up-highlights-from-the-council-on-environmental-qualitys-progress-in-tackling-the-climate-crisis-advancing-environmental-justice-conserving-and-restoring-lands-and-waters-bo/.

[10] Alan Ducatman, Jonas LaPier, Rebecca Fuoco & Jamie C. DeWitt, *Official health communications are failing PFAS-contaminated communities*, ENV'T. HEALTH (2022), doi:10.1186/s12940-022-00857-9 (stating that "[b]ecause of widespread use, as well as their mobility and persistence, most humans have detectable internal PFAS contamination from multiple sources, notably food [and] food contact materials").

[11] *PFAS in Products*, MAINE DEP'T OF ENV'T PROT., https://www.maine.gov/dep/spills/topics/pfas/PFAS-products (Jan. 4, 2024).

31. Until the ban takes full effect, Maine enacted an additional law requiring that companies disclose whether their products contain intentionally added PFAS to the Maine Department of Environmental Protection.[12]

32. Companies were initially required to make this disclosure by January 1, 2023, however, the Maine Legislature extended the reporting deadline until January 1, 2025.[13]

33. Prior to this extension, "more than sixty companies submitted information … on products they sell in Maine that contain PFAS."[14]

34. One such company was Defendant, who **itself disclosed** its intentional use of PFAS in all of its non-stick cookware Products.

35. "Under a Freedom of Access Act request for public records,"[15] public advocacy group Defend Our Health received and then assisted in publishing Defendant's disclosure of PFAS in the Products.[16]

**Defendant's Misrepresentations and Omissions are Actionable**

36. As a result of the presence of PFAS, Defendant's representations that the Products are healthy and good for the environment are false.

---

[12] *PFAS in Products: Currently Unavoidable Uses*, MAINE DEP'T OF ENV'T PROT., https://www.maine.gov/dep/spills/topics/pfas/PFAS-products/cuu.html (Jan. 10, 2024).

[13] https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[14] https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[15] https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[16] Loli Vilgra, *From Shampoo To Pesticides, See Maine's 1st List Of Products with 'Forever Chemicals,'* Bangor Daily News (Jan. 3, 2024), https://www.bangordailynews.com/2024/01/03/mainefocus/shampoo-pesticides-maine-products-forever-chemicals/ (the State Legislature extended the reporting deadline to 2025 after Defendant sent in its disclosure).

37. In addition, Defendant's omission that the Products contain PFAS is itself actionable as reasonable consumers understand that the Products do not contain PFAS due to Defendant's failure to mention the presence of PFAS.

38. No reasonable consumer would expect that cookware would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans and the environment. Accordingly, Plaintiffs and Class Members suffered economic injuries as a result of purchasing the Products.

## CLASS ALLEGATIONS

39. ***Class Definition.*** Plaintiffs bring this action on behalf of a class of similarly situated individuals, defined as all persons in the United States who purchased the Products during the applicable statute of limitations period (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale, Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, and members of the judge's staff, and the judge's immediate family.

40. Plaintiffs also seek to represent a subclass consisting of Class Members who purchased the Products in New York during the applicable statute of limitations period (the "Subclass").

41. Plaintiffs reserve the right to amend the definition of the Class and Subclass if discovery or further investigation reveals that the Class or Subclass should be expanded or otherwise modified.

42. ***Numerosity.*** Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclasses number in the tens of thousands. The precise number of Class and Subclass Members and their identities are unknown to Plaintiffs at this time but may be determined through

discovery. Class and Subclass Members may be notified of the pendency of this action by mail and/or publications through the distribution records of Defendant and third-party retailers and vendors.

43. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class and Subclass Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include but are not limited to (1) whether Defendant represented the Products as good for the environment; (2) whether Defendant represented the Products as promoting health; (3) whether Defendant committed the statutory and common law violations alleged against it herein by doing so; and (4) whether the Products contain PFAS.

44. ***Typicality.*** Plaintiffs' claims are typical of the claims of the Class and Subclass in that Plaintiffs', like other Class members, purchased, in a typical consumer setting, the Products and Plaintiffs sustained damages from Defendant's wrongful conduct.

45. ***Adequacy.*** Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class or Subclass Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions and they intend to prosecute this action vigorously. The interests of the Class and Subclass Members will be fairly and adequately protected by Plaintiffs and their counsel.

46. ***Superiority.*** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass Members. Individually, Class and Subclass Members may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense of all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of the case.

Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issue will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

47. Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

48. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiffs and members of the Class and Subclass and will likely retain the benefits of its wrongdoing.

49. Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

**COUNT I**
**Violation Of New York Gen. Bus. Law § 349**
**(On Behalf of the New York Subclass)**

50. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

51. Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

52. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Products and omitting material information about the Products.

53. The foregoing deceptive acts and practices were directed at consumers.

54. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Products as healthy and good for the

environment when they are not, as well as omit that the Products contain PFAS.

55. Plaintiffs and members of the New York Subclass were injured as a result because (a) they would not have purchased the Products if they had known of Defendant's misrepresentations/omissions that the Products were healthy, good for the environment, and free from harmful synthetic chemicals (i.e., PFAS); and (b) they overpaid for the Products on account of the misrepresentations/omissions.

56. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

## COUNT II
### Violation of New York Gen. Bus. Law § 350
### (On Behalf of the New York Subclass)

57. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

58. Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

59. Based on the foregoing, Defendant has engaged in customer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the ability of the Products as healthy and good for the environment when they are not, as well as by omitting that the Products contain PFAS.

60. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

61. This misrepresentation has resulted in consumer injury or harm to the public interest.

62. As a result of this misrepresentation, Plaintiffs and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Products if they had known of Defendant's misrepresentations/omissions that the Products were healthy, good for the environment, and free from harmful synthetic chemicals (i.e., PFAS); and (b) they overpaid for the Products on account of the misrepresentations/omissions.

63. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars whichever is greater, three times actual damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 350 of the New York General Business Law.

**COUNT III**
**Fraud**
**(On Behalf of Plaintiffs and All Class Members)**

64. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

65. Plaintiffs bring this claim individually and on behalf of members of the Class and Subclass against Defendant.

66. At the time Plaintiffs, the Class, and Subclass Members purchased the Products, Defendant did not disclose, but instead concealed that its Products contained PFAS.

67. Defendant did so with knowledge of its falsity, in that, Defendant knew its Products contained PFAS, as demonstrated by its disclosure of this fact to the Maine Department of Environment.

68. Defendant also knew that its omissions regarding the Products were material, and

14

that a reasonable consumer would rely upon Defendant's omissions in making purchasing decisions.

69. Plaintiffs, the Class, and Subclass Members did not know, nor could they have known through reasonable diligence, about the true nature of the Products.

70. Plaintiffs, the Class, and Subclass Members would have been reasonable in relying on Defendant's omissions in making their purchasing decisions.

71. Plaintiffs, the Class, and Subclass Members sustained damages as a result of their reliance on Defendant's omissions, thus causing Plaintiffs, the Class, and Subclass Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclasses under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Class and Subclass, and Plaintiffs' attorneys as Class and Subclass Counsel;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper;

(h) For an order awarding Plaintiffs, the Class, and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: April 3, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Alec M. Leslie*
      Alec M. Leslie

Alec M. Leslie
1330 Avenue of the Americas, 32 Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Attorneys for Plaintiffs*