UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRIEDA TAWIL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRUMIS IMPORTS, INC.,<br><br>Defendant. | Civil Action No.: 1:24-cv-02544-KPF<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**[1]<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Frieda Tawil ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Brumis Imports, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of herself and similarly situated consumers ("Class Members") who purchased Defendant's Brooklyn Steel-branded non-stick cookware (the "Products").[2]

2. Defendant is fully aware that its Products contain per- and polyfluoroalkyl substances ("PFAS"), which are synthetic chemicals that pose undue health risks, even at low levels, yet it intentionally fails to disclose this information to consumers, such as Plaintiff.

---

[1] The Court has granted leave to file this Second Amended Complaint. *See* ECF No. 21 (Aug. 9, 2024 Memo Endorsement).

[2] Those Products include, but are not limited to, all varieties of Brooklyn Steel non-stick cookware products, which are also sold in a variety of sets: Atmosphere, Celeste, Cosmo, Diecast, Galaxy, Gravity, Luna, Lunar Eclipse, Mars, Milky Way, Nebula, Orion, Rocket, Satellite, Solstice, Summer Solstice, Supernova, Ultraviolet, Zodiac.

1

3. Indeed, Defendant only discloses that its Products contain PFAS at the very bottom of its website, yet Defendant does not sell its Products directly to consumers from its website.[3]

4. Unfortunately for consumers, Defendant does not disclose on the Products' labeling that they contain PFAS. Thus, consumers who made their purchases elsewhere, including Plaintiff, are unaware that the Products contain PFAS.

5. In addition, Defendant tucked this admission at the bottom of its webpage, meaning that reasonable consumers who visit Defendant's website would still not be placed on notice that the Products contain PFAS.

6. Defendant also recently disclosed its intentional use of PFAS in the Products to the Maine Department of Environmental Protection, in connection with the Maine PFAS reporting law requirements.

7. The public advocacy group, Defend Our Health, received this information from the Maine Department of Environmental Protection under a Freedom of Access Act request for public records and thereafter assisted in publishing Defendant's disclosure of PFAS in the Products.

8. Laboratory studies have shown that PFAS exposure raises a host of health effects, such as various cancers, liver damage, and immunotoxicity effects.[4]

9. Because of the health and environmental concerns presented by PFAS, consumers—like Plaintiff—care about their presence, even if in small amounts.

---

[3] To the best of Plaintiff's knowledge, Defendant removed this disclosure at the bottom of its website shortly after the August 1, 2024 pre-motion conference before this Court.

[4] Nicholas J. Heckert, et al. "Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity," ENVIRON. SCI. TECHNOL. 2022, 56, 1162-1173.

10.     Defendant knew, or should have known, that PFAS are unsafe and raise health risks because "the dangers of PFAS are well known" to the point where "public demand is leading to a growing market for PFAS-free products."[5]

11.     Based on Defendant's omission, a reasonable consumer would expect that the Products are free from PFAS. Yet Defendant does not notify consumers that the Products contain PFAS—synthetic chemicals that pose undue health risks to humans and are bad for the environment.

12.     Accordingly, Plaintiff brings claims against Defendant individually and on behalf of a class of all others similarly situated for (1) violation of New York's General Business Law § 349; (2) violation of New York's General Business Law § 350; and (3) Fraud.

## PARTIES

13.     Plaintiff Frieda Tawil is an individual consumer who, at all times material hereto, was a citizen of the State of New York, residing in Brooklyn, New York. Plaintiff Tawil purchased one full set of Defendant's Brooklyn Steel Lunar Eclipse non-stick pots and pans in 2023 from Macy's online website, and used the Product in New York during the Class Period.

14.     Plaintiff Tawil believed that the Product she purchased did not contain PFAS based on Defendant's omission of the fact that the Products contain PFAS. Defendant's omissions were part of the basis of the bargain in that Plaintiff Tawil would not have purchased the Product, or would not have been willing to pay the same amount for the Product, had she known that it contained PFAS. As a direct result of Defendant's omissions, Plaintiff Tawil suffered, and continues to suffer, economic injuries.

---

[5] Jeffrey Kluger, *Companies Knew the Dangers of PFAS 'Forever Chemicals'—and Kept Them Secret*, TIME (June 1, 2023), https://time.com/6284266/pfas-forever-chemicals-manufacturers-kept-secret/.

3

15. Defendant Brumis Imports, Inc., is a New York corporation with its principal place of business in New York, New York. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States, including New York. Defendant created and/or authorized the misleading and deceptive advertisements, packaging, and labeling for the Products.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a different state from Defendant.

17. This Court has personal jurisdiction over Defendant because Defendant is incorporated and maintains its principal place of business in New York.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### The Presence of PFAS in the Products

19. Defendant sells a variety of non-stick pots and pans (the "Products").

20. In doing so, Defendant omits to inform consumers that its Products contain PFAS, synthetic chemicals that are harmful to both humans and the environment,[6] despite its knowledge that the Products do contain PFAS.

---

[6] *Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)*, NAT. INST. OF ENV'T HEALTH SCIS., https://www.niehs.nih.gov/health/topics/agents/pfc (March 6, 2024).

4

21. Indeed, tucked away at the bottom of its webpage as recently as August 1, 2024, Defendant stated that its Products have PFAS, as demonstrated in **Figures 1 and 2** below:

**Figure 1:**



**Figure 2:**



22. As recently as August 1, 2024, the above representation appeared at the bottom of Defendant's webpage, for all of the following lines of Brooklyn Steel Products:[7]

| | | |
|---|---|---|
| • Atmosphere | • Lunar Eclipse | • Solstice |
| • Celeste | • Mars | • Summer |
| • Cosmo | • Milky Way | • Solstice |
| • Diecast | • Nebula | • Supernova |
| • Galaxy | • Orion | • Ultraviolet |
| • Gravity | • Rocket | • Zodiac |
| • Luna | • Satellite | |

23. Yet Defendant does not disclose that the Products contain PFAS on the Products' labeling for consumers to see when making their purchases elsewhere in-person or online.

24. This admission at the bottom of Defendant's webpage is insufficient to put reasonable consumers on notice that the Products contain PFAS, especially considering that consumers cannot purchase Products directly from Defendant's website.

25. Just as troubling, if a consumer were to even find this warning disclosure, and then subsequently click on the "visit corehome.com/pfas" link to learn more about PFAS in Defendant's Products, that link, as of June 8, 2024, would lead to the following image, as demonstrated in **Figure 3** below:

---

[7] *Id.*

**Figure 3:**[8]



26.     At the same time, Defendant also states to consumers who visit its' Amazon Page, that it "understand[s] the importance of keeping harmful chemicals out of our products and out of your kitchen," as demonstrated below in **Figures 4 and 5**:

---

[8] https://www.corehome.com/pfas (last accessed Jun. 8, 2024).

**Figure 4:**



**Figure 5:**



      27.     Scientific studies have shown that PFAS exposure raises a host of health effects in humans, such as cancers, liver damage, and immunotoxicity effects.[9]

---

[9] *Id.*

28. In addition, the harmful risks also extend to the environment where, once introduced, they quickly spread around the globe through multiple pathways, as demonstrated below in **Figure 6**:

**Figure 6:**



29. Indeed, PFAS are known as "forever chemicals" because they are "resistant to environmental and metabolic degradation" and "build up" in the bodies that are exposed to PFAS.[10]

30. Because PFAS persist and bioaccumulate over time, they are harmful even at very low levels.

---

[10] *Research for Understanding PFAS Uptake and Bioaccumulation in Plant and Animals in Agricultural, Rural, and Tribal Communities Request for Applications (RFA)*, EPA (2023) 1, 2, https://www.epa.gov/system/files/documents/2023-10/fy23-star-epa-usda-pfas-rfa-october-2023-final.pdf; Phillip C. Bost, Mark J. Strynar, Jessica L. Reiner, Jerry A. Zweigenbaum, Patricia L. Secoura, Andrew B. Lindstrom & Janice A. Dye, *U.S. domestic cats as sentinels for perfluoroalkyl substances: Possible linkages with housing, obesity, and disease*, 151 ENV'T. RSCH. (2016) 145, https://doi.org/10.1016/j.envres.2016.07.027 (stating that PFAS are "resistant to biodegradation processes").

31.     In light of the harm PFAS cause, consumers have grown increasingly aware of and concerned by PFAS in their bodies, the environment, and the products they use. According to a recent survey, "when asked to choose the top three factors [consumers] prioritize when deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)."[11]

32.     Moreover, "[t]he majority of shoppers…are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."[12]

33.     Underscoring the gravity of the PFAS threat, on October 18, 2021, the Biden Administration announced accelerated efforts to protect Americans from PFAS, noting that they "can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."[13]

34.     Recent legislation echoes this concern: New York, Washington, Vermont, Connecticut, Colorado, California, Maryland, Minnesota, Rhode Island, and Hawaii have banned the intentional use of PFAS in food packaging.

35.     These legislative actions make sense as researchers have also established that PFAS are mobile and readily migrate from "food contact materials" onto food.[14]

---

[11] *Id.*

[12] *Id.*

[13] *One-Year Wrap-Up*, THE WHITE HOUSE (Jan. 20, 2022), https://www.whitehouse.gov/ceq/news-updates/2022/01/20/one-year-wrap-up-highlights-from-the-council-on-environmental-qualitys-progress-in-tackling-the-climate-crisis-advancing-environmental-justice-conserving-and-restoring-lands-and-waters-bo/.

[14] Alan Ducatman, Jonas LaPier, Rebecca Fuoco & Jamie C. DeWitt, *Official health communications are failing PFAS-contaminated communities*, ENV'T. HEALTH (2022), doi:10.1186/s12940-022-00857-9 (stating that "[b]ecause of widespread use, as well as their mobility and persistence, most humans have detectable internal PFAS contamination from multiple sources, notably food [and] food contact materials").

36. Maine—taking the legislation one step further—enacted a law that prohibits the sale of *any* product with intentionally added PFAS, effective January 1, 2030.[15]

37. Until the ban takes full effect, Maine enacted an additional law requiring that companies disclose whether their products contain intentionally added PFAS to the Maine Department of Environmental Protection.[16]

38. Companies were initially required to make this disclosure by January 1, 2023, however, the Maine Legislature extended the reporting deadline until January 1, 2025.[17]

39. Prior to this extension, "more than sixty companies submitted information … on products they sell in Maine that contain PFAS."[18]

40. One such company was Defendant, who itself disclosed its intentional use of PFAS in all of its non-stick cookware Products.

41. "Under a Freedom of Access Act request for public records,"[19] public advocacy group Defend Our Health received the information Defendant itself disclosed to the State of Maine regarding its intentional use of PFAS in its Products, and then assisted in publishing this information.[20] As seen in Exhibit 1 to this Second Amended Complaint, "Brooklyn Steel Non-stick cookware" is listed as "Products Containing PFAS."

---

[15] *PFAS in Products*, MAINE DEP'T OF ENV'T PROT., https://www.maine.gov/dep/spills/topics/pfas/PFAS-products (Jan. 4, 2024).

[16] *PFAS in Products: Currently Unavoidable Uses*, MAINE DEP'T OF ENV'T PROT., https://www.maine.gov/dep/spills/topics/pfas/PFAS-products/cuu.html (Jan. 10, 2024).

[17] https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[18] https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[19] https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[20] Loli Vilgra, *From Shampoo To Pesticides, See Maine's 1st List Of Products with 'Forever Chemicals,'* Bangor Daily News (Jan. 3, 2024), https://www.bangordailynews.com/2024/01/03/mainefocus/shampoo-pesticides-maine-products-forever-chemicals/ (the State Legislature extended the reporting deadline to 2025 after Defendant sent in its disclosure).

**Migration and Harmful Effects of PFAS in Cookware**

42. In non-stick cookware, such as the Products Defendant manufacturers and sells, PFAS are most commonly present in the coating that makes the cookware non-stick.[21] "The safety of ... pans and other kitchen utensils has been the aim of some research studies, since these materials reach very high temperatures, which promote the migration [of PFAS into food]."[22]

43. Beyond releasing and causing migration of PFAS into food, non-stick cookware such as Defendant's "can release various gases and chemicals of perfluorinated compounds that present mild to severe toxicity" "at normal cooking temperatures."[23]

**Defendant's Omissions are Actionable**

44. In packaging, advertising, and selling the Products, Defendant omits from consumers that its Products contain PFAS.

45. Defendant has superior—if not exclusive—knowledge of the manufacturing process of the Products, and the fact that the Products contain PFAS. This information is not readily available to consumers.

---

[21] Mohamed Mostafa AbdulFadl, Mohamed Ashraf Sharaf, Mostafa Mahmood Mostafa, and Hamza Mohamed El-Saeid, *Impact of household cooking on release of fluorinated compounds PFOA and PFOS from Tefal coated cookware to foods*, 03 WJARR (2019) (stating "Perfluorinated compounds (PFCs) … are being used in manufacturing food contact materials, including non-stick coatings (polytetrafluoroethylene (PTFE or Teflon) for cookware."); EPA, *Contaminants of Merging Concern in Fish:* Perfluorinated Compounds (PFCs), (2013), https://www.epa.gov/sites/default/files/2018-11/documents/cecs-pfcs-factsheet.pdf (defining perfluorinated compounds as "a class of synthetic compounds containing thousands of chemicals formed from carbon chains with fluorine attached to these chains. Perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS) are two of the best known PFCs").

[22] Arabela Ramírez Carnero, Antía Lestido-Cardama, Patricia Vazquez Loureiro, Letricia Barbosa-Pereira, Ana Rodríguez Bernaldo de Quirós, and Raquel Sendón, *Presence of Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) in Food Contact Materials (FCM) and Its Migration to Food*, 10 FOODS 1443 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8306913/#:~:text=It%20is%20important%20to%20note,their%20migration%20data%20into%20food.

[23] AbdulFadl et al., *supra* note 42.

7

46. Defendant's omission that the Products contain PFAS is itself actionable as reasonable consumers understand that the Products do not contain PFAS due to Defendant's failure to mention the presence of PFAS.

47. No reasonable consumer would expect that cookware—products that have such direct contact with food—would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans and the environment.  Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products because Plaintiff and the Class would not have purchased the Products or would not have paid the same amount for the Products had they known the Products contained PFAS.

**Defendant's Conduct is Fraudulent**

48. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

49. WHO: Defendant made material omissions of fact in its advertising of the Products.  Specifically, Defendant omitted from the Products' labeling that the Products contained PFAS.

50. WHAT: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products are free from PFAS.  Defendant failed to disclose to Plaintiff and Class Members that the Products do contain PFAS.  Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.  This is especially true given that Defendant describes its Products as being free from PFOA (a type of PFAS).  This shows

8

Defendant is aware that consumers care about the presence of PFAS in their cookware. Yet, Defendant has omitted from the labeling and advertising of its Products that the Products contain PFAS.

51. WHEN: Defendant omitted the material fact that the Products contain PFAS continuously throughout the applicable statutory periods, including at the point of sale.

52. WHERE: The Products are sold in brick-and-mortar stores and online nationwide.

53. HOW: Defendant omitted from the Products' labeling that they contain PFAS. And as discussed in detail throughout the Complaint, the presence of PFAS in products is material to Plaintiff and Class Members because it affects their decision to purchase the Products.

## CLASS ALLEGATIONS

54. ***Class Definition.*** Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as all persons in the United States who purchased the Products during the applicable statute of limitations period (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale, Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, and members of the judge's staff, and the judge's immediate family.

55. Plaintiff also seeks to represent a subclass consisting of Class Members who purchased the Products in New York during the applicable statute of limitations period (the "Subclass").

56. Plaintiff reserves the right to amend the definition of the Class and Subclass if discovery or further investigation reveals that the Class or Subclass should be expanded or otherwise modified.

57.     ***Numerosity.***     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the tens of thousands.  The precise number of Class and Subclass Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class and Subclass Members may be notified of the pendency of this action by mail and/or publications through the distribution records of Defendant and third-party retailers and vendors.

58.     ***Commonality and Predominance.***     Common questions of law and fact exist as to all Class and Subclass Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include but are not limited to (1) whether the Products contain PFAS (2) whether Defendant omitted to inform consumers that its Products contain PFAS, and (3) whether Defendant committed the statutory and common law violations alleged against it herein by doing so.

59.     ***Typicality.***     Plaintiff's claims are typical of the claims of the Class and Subclass in that Plaintiff, like other Class Members, purchased, in a typical consumer setting, the Products and Plaintiff sustained damages from Defendant's wrongful conduct.

60.     ***Adequacy.***     Plaintiff is an adequate representatives of the Class and Subclasses because her interests do not conflict with the interests of the Class or Subclass Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions and she intends to prosecute this action vigorously.  The interests of the Class and Subclass Members will be fairly and adequately protected by Plaintiff and her counsel.

61.     ***Superiority.***     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass Members. Individually, Class and Subclass Members may lack the resources to undergo the burden and expense of individual

prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense of all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issue will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

62. Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

63. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of its wrongdoing.

64. Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I
### Violation Of New York Gen. Bus. Law § 349
### (On Behalf of the New York Subclass)

65. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

67. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by omitting material information about the Products.

68. The foregoing deceptive acts and practices were directed at consumers.

11

69. The foregoing deceptive acts and practices are misleading in a material way because they omit the fact that the Product contains PFAS.

70. Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Products if they had known of Defendant's omissions regarding the Products containing harmful synthetic chemicals (*i.e.*, PFAS); and (b) they overpaid for the Products on account of the omissions.

71. Defendant had and has exclusive knowledge of the Product's composition and its inclusion of PFAS on its Product. This information is not known to Plaintiff or the Class.

72. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

**COUNT II**
**Violation of New York Gen. Bus. Law § 350**
**(On Behalf of the New York Subclass)**

73. Plaintiff incorporates by reference and re-allege each and every allegation set forth above as though fully set forth herein.

74. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

75. Based on the foregoing, Defendant has engaged in customer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of Section 350 of the New York General Business Law by omitting that the Products contain PFAS.

76. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

77. This material omission has resulted in consumer injury or harm to the public interest.

78. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Products if they had known of Defendant's omissions that the Products contained harmful synthetic chemicals (*i.e.*, PFAS); and (b) they overpaid for the Products on account of the omissions.

79. Defendant had and has exclusive knowledge of the Product's composition and its inclusion of PFAS on its Product. This information is not known to Plaintiff or the Class.

80. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars whichever is greater, three times actual damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 350 of the New York General Business Law.

## COUNT III
### Fraud
### (On Behalf of Plaintiff and All Class Members)

81. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

82. Plaintiff brings this claim individually and on behalf of members of the Class and Subclass against Defendant.

83. At the time Plaintiff, the Class, and Subclass Members purchased the Products, Defendant did not disclose, but instead concealed that its Products contained PFAS.

84. Defendant did so with knowledge of its falsity, in that, Defendant knew its Products contained PFAS, as demonstrated by its disclosure of this fact (1) at the bottom of its webpage and (2) to the Maine Department of Environment. And further, its disclosure to the

13

Maine Department of Environment signals that Defendant intentionally used PFAS in its Products.

85. Defendant also knew that its omissions regarding the Products were material, and that a reasonable consumer would rely upon Defendant's omissions in making purchasing decisions. This is further underscored by the fact that Defendant advertised and advertises its Products as being free from PFOA (a type of PFAS), meaning it is aware that consumers do not want PFAS in their cookware.

86. Plaintiff, the Class, and Subclass Members did not know, nor could they have known through reasonable diligence, about the true nature of the Products.

87. Plaintiff, the Class, and Subclass Members would have been reasonable in relying on Defendant's omissions in making their purchasing decisions.

88. Plaintiff, the Class, and Subclass Members sustained damages as a result of their reliance on Defendant's omissions, thus causing Plaintiff, the Class, and Subclass Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclasses under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Subclass, and Plaintiff's attorneys as Class and Subclass Counsel;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the Class, and the Subclasses on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper;

(h) For an order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 3, 2024                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Alec M. Leslie*
    Alec M. Leslie

Alec M. Leslie
1330 Avenue of the Americas, 32 Fl.
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Attorneys for Plaintiff*